**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SHARP CORPORATION,**<br><br>Plaintiff**,**<br><br>vs.<br><br>**HISENSE USA CORPORATION, ET AL.,**<br><br>Defendants**.** | CASE NO. 17-cv-03341-YGR<br><br>**ORDER:**<br>**(1) GRANTING MOTION TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS OR, ALTERNATIVELY, DISMISS THE ACTION;**<br>**(2) DENYING MOTION FOR SANCTIONS;**<br>**(3) DENYING MOTION TO AMEND TO CERTIFY QUESTION OR FOR RECONSIDERATION; AND**<br>**(4) DENYING AS MOOT EX PARTE MOTION TO STAY CASE**<br><br>Re: Dkt. Nos. 19, 20, 61, 63 |

Plaintiff Sharp Corporation ("Sharp") originally filed this action on May 9, 2017, in the Superior Court of the State of California, County of San Francisco, asserting a single claim against defendants Hisense Co. Ltd. ("HCL"), Hisense USA Corp. ("HUSA"), Hisense Electric Co. Ltd ("HE"), Hisense USA Multimedia R&D Center, Inc. ("HUMRD"), and Hisense International Corp. (Hong Kong) American Investment Co. Ltd. ("HIAIC"). In its First Amended Complaint (Dkt. No. 9, "FAC"), Sharp alleges claims against all defendants for: (i) fraudulent concealment; (ii) rescission; and (iii) unfair, unlawful, and fraudulent business practices under California Business & Professions Code section 17200.

Pending before the Court are several motions: (1) the motion of defendants to compel arbitration and stay the proceedings or, alternatively, dismiss the action (Dkt. No. 19); (2) defendants' motion for sanctions (Dkt. No. 20); (3) Sharp's Motion To Amend To Certify Question Or For Reconsideration (Dkt. No. 61) ; and (4) Sharp's Ex Parte Motion to Stay the case pending decision on the motion to amend to certify question or for reconsideration (Dkt. No. 63).

Having carefully considered the papers filed in support of and in opposition to the motions, the Court rules as follows:

(1) the motion of defendants to compel arbitration and stay the proceedings or, alternatively, dismiss the action (Dkt. No. 19) is **GRANTED** as to the motion to compel arbitration

1  and for stay, and **DENIED WITHOUT PREJUDICE** as to the motions to dismiss under FRCP 12(b)(2) and 12(b)(6);

(2) defendants' motion for sanctions (Dkt. No. 20) is **DENIED**;

(3) Sharp's Motion To Amend To Certify Question Or For Reconsideration (Dkt. No. 61) is **DENIED**; and

(4) Sharp's Ex Parte Motion to Stay the case pending decision on the motion to amend to certify question or for reconsideration is **DENIED AS MOOT**.

The reasons follow.

### DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS OR, ALTERNATIVELY, DISMISS THE ACTION

In the motion at Docket No. 19, defendants seek several forms of relief. (Dkt. No. 19.) First, HIAIC moves to compel arbitration of the claims based upon a Trademark and License Agreement ("the Agreement") between it and Sharp. Non-signatory defendants HCL, HUSA, HE, and HUMRD seek to stay the claims against them pending that arbitration. Alternatively, if the Court declines to compel arbitration or stay the action, defendants bring motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim. Defendants HUSA, HUMRD and HIAIC seek to dismiss the claims for fraudulent concealment, rescission, and violation of the UCL for failure to allege facts sufficient to state a claim. Defendants HCL and HE seek to dismiss pursuant to Rule 12(b)(2) on the grounds that the FAC fails to allege facts to state a prima facie showing of general or specific jurisdiction.

Having considered carefully the papers filed in support of and in opposition to the motions, and the admissible evidence, and for the reasons set forth herein, the Court **GRANTS** the Motion to Compel Arbitration as between Sharp and HIAIC. Because the as the claims and allegations asserted against the remaining defendants are identical to those against HIAIC, and because they overlap substantially with the claims at issue in the arbitration between Sharp and HIAIC already pending before the arbitral body, the motion to stay is likewise **GRANTED**.

As the challenge to the pleadings is brought in the alternative, the Court **DENIES WITHOUT**

1 **PREJUDICE** the motions to dismiss pursuant to Rule 12(b)(2), which may be renewed at such time as the stay is dissolved.

**I. BACKGROUND**

**A. Arbitration Agreement and Proceedings**

Under the Agreement entered into by HIAIC and Sharp on July 31, 2015, Sharp granted HIAIC an exclusive license to use certain Sharp-brand trademarks to manufacture, market, distribute, sell, and repair televisions throughout the Americas (excluding Brazil). (Declaration of David G. Hille, Dkt. No. 19-2 ("Hille Decl."), Exh. A.) The Agreement contains a mandatory arbitration provision which provides that "[a]ny disputes arising out of or in connection with" the terms of the Agreement be finally resolved through arbitration by the Singapore International Arbitration Centre ("Singapore Centre"). (*Id.* at 29.)

In late 2016, Sharp was acquired by Foxconn Technology Group ("Foxconn") and began publicly stated an intention to undo the Agreement and take control of the Sharp brand. (*Id.*, Exh. B at 37-38, ¶¶ 20-21, 23-25; Exh. D at 101, ¶ 17.) Sharp first sought to convince HIAIC to cancel the Agreement. When HIAIC did not cancel voluntarily, Sharp sought to terminate the Agreement by sending a letter to HIAIC on April 17, 2017, claiming that HIAIC had breached the agreement because its brightness measurements, radiated emissions, internal wiring harness, and advertised screen sizes and resolutions violated certain U.S. regulations and standards set by the Federal Communications Commission ("FCC") and Federal Trade Commission ("FTC"). (*Id.*, Exh. D at 107-08, ¶ 41-42.)

On April 24, 2017, HIAIC initiated arbitration proceedings under the Agreement by filing a notice of arbitration with the Singapore Centre and seeking emergency interim relief to enjoin Sharp's purported termination of the Agreement. (*Id.* at ¶ 3, Exh. B at 40–49.) Sharp opposed the application for emergency injunctive relief, alleging that HIAIC had breached the agreement, citing all the same reasons stated in the termination letter. It also filed a response to the notice of arbitration, asserting the issues raised in the termination letter.

After a hearing, on May 9, 2017, the arbitrator issued an order requiring granting the interim injunctive relief. The order discussed each of the grounds for termination offered by Sharp

and found that there was a reasonable possibility of success on the merits of HIAIC's argument that the termination was spurious. (*Id.*, Exh. D at 113-19, ¶¶ 62-92.) The interim order required Sharp to continue performing under the Agreement and treat it as being in full force and effect, as well as to refrain from taking any actions to disparage or disrupt HIAIC's business under the Agreement. (*Id.* at ¶ 5, Exh. D at 129.) Based on the evidence in the record thus far, the arbitration proceedings are on-going.

### B. The Complaint In this Action

Sharp's FAC alleges the identical issues stated in its April 24, 2017 termination letter. Specifically it alleges that: (i) the brightness measurements on certain Sharp-branded products were not as advertised, in violation of FTC regulations (FAC ¶¶ 70-71); (ii) the radiated emissions from certain Sharp-branded products violated the relevant FCC regulations (*id.* ¶¶ 54-59); (iii) an internal wire harness violated consumer safety standards (*id.* ¶¶ 72-77); and the false advertisement of screen size and resolution violated certain FTC standards (*id.* ¶¶ 60-69, 78-79).

## II. LEGAL FRAMEWORK

The Federal Arbitration Act (the "FAA") requires a district court to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3. A party may bring a motion in the district court to compel arbitration. 9 U.S.C. § 4. The FAA reflects "both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Mortensen v. Bresnan Commuc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("The [FAA] . . . has been interpreted to embody "'a liberal federal policy favoring arbitration.'"). The FAA broadly provides that an arbitration clause in a contract involving a commercial transaction "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Once a court is satisfied the parties agreed to arbitrate, it must promptly compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

In ruling on the motion, the Court's role is typically limited to determining whether: (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). Generally, if a contract contains an arbitration provision, arbitrability is presumed, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *AT&T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

"Both the arbitrability of the merits of a dispute and the question of who has the primary power to decide arbitrability depend on the agreement of the parties." *Goldman, Sachs & Co. v. Reno*, 747 F.3d 733, 738 (9th Cir. 2014) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). However, these questions are decided by the arbitrator instead of courts where "the parties clearly and unmistakably" express that intention. *AT&T Techs.*, 475 U.S. at 649; *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.").

When a court compels arbitration, as "a matter of its discretion to control its docket," a district court may stay litigation among non-arbitrating parties pending the outcome of arbitrable claims or a parallel arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n.23 (1983); *see, e.g.*, *BrowserCam, Inc. v. Gomez, Inc.*, No. 08–CV–02959–WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (it is "within a district court's discretion whether to stay, 'for [c]onsiderations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration.") (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l., Ltd.*, 750 F.2d 1422, 1427 (9th Cir.1985)).

**III. DISCUSSION**

**A.  Compelling Arbitration of Sharp's Claims Against HIAIC**

Here, the parties do not dispute, and the Court concludes, that there exists an agreement between the parties to arbitrate, and that the agreement is valid and enforceable. *See Lifescan*, 363

5

F.3d at 1012. Further, Sharp concedes that the common law claims for fraudulent concealment and rescission are subject to arbitration.

Sharp contends, however, that the UCL claim is not arbitrable and does not arise from the terms of the Agreement. Sharp argues that the claim is seeking equitable relief and is brought as a private attorney general on behalf of the public which does not implicate the terms of the Agreement. It further contends that the Agreement is governed by New York law, which precludes arbitration of a statutory claim absent a "clear and unmistakable waiver" in the Agreement.

Sharp's arguments fail to recognize that the FAA preempts any state law attempts to carve out claims from arbitration. Previously, the California Supreme Court in *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 316 (2003) held that a claim for injunctive relief on behalf of the public was not subject to arbitration. However, in light of more recent United States Supreme Court authority on the reach of the FAA, the Ninth Circuit overturned the rule in *Cruz* to hold that the FAA preempts such a limitation. *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) ("we therefore hold that the FAA preempts the *Broughton–Cruz* rule" prohibiting arbitration of claims for public relief under the UCL and other state statutes) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)). As the Supreme Court stated in *Concepcion*, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* at 341. Consequently, Sharp's UCL claim, although it seeks public injunctive relief, and despite any limitations the state statute might have attempted to create to preclude it, is subject to arbitration under the FAA.[1]

The broad arbitration clause here plainly encompasses the allegations of the UCL claim. Indeed, those allegations mirror Sharp's contentions in the arbitration proceedings. Regardless of

---

[1] The Court notes that the arbitration provision here does not purport to waive the right to public injunctive relief, but only to require all claims, including those that seek public injunctive relief, to be compelled to arbitration. *Cf. McGill v. Citibank, N.A.*, 2 Cal.5th 945, 963 (2017). (arbitration agreement purporting to waive right to pursue claim for public injunction *in any forum* not enforceable under FAA).

6

whether Sharp is also seeking public injunctive relief on account of that conduct through its UCL claim, the claim must be compelled to arbitration under the terms of the Agreement.

Accordingly, the Court **GRANTS** HIAIC's motion to compel Sharp into arbitration.

### B. Stay of the Proceedings as to Remaining Defendants

Having ordered that all of Sharp's claims against HIAIC be compelled to arbitration, the Court turns to the question of the propriety of a stay of the claims against the remaining defendants pending arbitration. Under section 3 of the FAA, a stay is mandatory as to the parties to the arbitration agreement. 9 U.S.C. § 3 ("[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had."). As to litigants who are not parties to the arbitration agreement, the court may stay the litigation as a matter of discretion to await the outcome of the pending arbitration. *Moses H. Cone*, 460 U.S. at 20 n.23. When exercising its discretionary power to stay, a court must weigh the "competing interests which will be affected by the granting or refusal to grant a stay," among which are "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX Inc. v. Hall*, 200 F.2d 265, 268 (9th Cir. 1962)).

Defendants argue that a stay is warranted because the facts, allegations, and claims asserted against the non-signatory defendants are identical to those against HIAIC. Staying the litigation as to the claims against them would promote judicial economy, prevent duplicative efforts, and avoid inconsistent results. Defendants further contend that a stay would promote the strong federal policies promoting arbitration, eliminating the possibility of encroachment by the federal courts on the province of the arbitral tribunal.

Sharp counters that a stay would be improper because the arbitration will not produce complete relief, since the non-signatories are the manufacturers and sellers of the televisions alleged to violate the federal regulations and standards. Sharp argues that claims, particularly the

7

UCL claim, arise out of non-signatory HE's poor quality manufacturing, and a stay of the claim would undermine California consumers' interest in expeditious results. Sharp further contends that the arbitration agreement could have included affiliates, but did not. Citing this Court's decision in *Congdon*, Sharp argues that the failure to include the affiliates indicates that the parties to the Agreement accepted possibility of piecemeal resolution and inconsistent results. *Congdon v. Uber Techs., Inc.*, 226 F. Supp. 3d 983, 991 (N.D. Cal. 2016).

The Court is unpersuaded by Sharp's arguments. A stay should be granted where the resolution of issues in the arbitration would be determinative of the issues in the lawsuit. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (noting that a discretionary stay is warranted where parallel action will help settle or simplify questions of fact and law). The claims against the defendants here all arise from the identical conduct, and are intertwined. *Cf. Congdon*, 226 F. Supp. 3d at 990; *see also Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 345 (5th Cir. 2004) (reversing a denial of stay where the litigation and arbitration were "inherently inseparable"); *Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 347–48 (5th Cir. 2002) (finding claims against signatory party were inseparable from claims against non-signatory and denial of stay would "undermine the arbitration proceedings . . . thereby thwarting the federal policy in favor of arbitration"). In *Congdon*, the plaintiffs were alleged to be independent contractor ride-share drivers, working under a standardized contract with defendant Uber that included an optional arbitration clause. Those drivers who had not opted out of arbitration were compelled to arbitration, but those who had opted out of the arbitration clause sought to proceed with their litigation. The Court found that the determination of the issues in the individual driver arbitrations would have no effect on the litigation of claims as to the opt-out drivers, such that concerns of judicial economy did not arise. *Congdon,* 226 F. Supp. 3d at 991. Nothing in *Congdon* suggests that claims against a corporate parent and its affiliates, arising out of the identical conduct, should not be stayed as to the affiliates during the pendency of arbitration with their parent.

Accordingly, the Court **GRANTS** Hisense's motion to stay all proceedings as to the non-signatory defendants pending the completion of the Arbitration.

8

## DEFENDANTS' MOTION FOR SANCTIONS

HIAIC moves for an Order awarding a monetary sanction against Sharp and its counsel under the Court's inherent power. HIAIC argues that Sharp is pursuing this action in bad faith because it has: (i) disregarded its agreement to arbitrate all the claims asserted in its FAC under the terms of the Agreement; (ii) breached the Agreement's confidentiality provision; (iii) attempted to circumvent a pending arbitration to which it is a party; and (iv) filed this action to publicly harass defendants.

Defendants' Motion for Sanctions (Dkt. No. 20) is **DENIED**. The Court finds that, although Sharp's positions in this litigation have been lacking in merit, the extraordinary remedy of sanctions for bad faith litigation conduct is not warranted.

## SHARP'S MOTION TO AMEND TO CERTIFY QUESTION OR FOR RECONSIDERATION

Sharp moves for an order amending the Court's October 18, 2017 Order (Dkt. No. 60, "Order"), which denied Sharp's motion to remand. Sharp seeks to amend the order to certify it for interlocutory appeal under 28 U.S.C. section 1292(b), and to stay this action pending determination of that interlocutory appeal, or, in the alternative, for leave to file a motion for reconsideration.

Section 1292(b) provides that "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, [s]he shall so state in writing in such order."

In its prior order, the Court found that it had jurisdiction under section 1441(d) because Hisense Co. Ltd. met the "instrumentality of a foreign state" definition under that statute and section 1603. The Court found that the evidence established a prima facie showing that the State-Owned Assets Supervision & Administration Commission of Qingdao Municipal Government (SASAC-QMG) was a political subdivision of a foreign state, and that Hisense Co. Ltd. was an entity "a majority of whose shares or other ownership interest is owned by" SASAC-QMG. Sharp

did not present evidence or authorities to contradict that determination. To the contrary, it alleged in this action and others, that Hisense Co. Ltd was a wholly-owned political subdivision of the Chinese government, established by the Qingdao governmental authorities. (Order at 4, n. 4.)

The Court further found it proper to maintain supplemental jurisdiction over the claims remaining after Hisense Co. Ltd. was dismissed, relying on *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1407 (9th Cir. 1989).

Sharp's arguments for certification and for reconsideration are largely identical to those it offered in support of its motion, which was the subject of extended oral argument, as well as supplemental briefing at the request of the Court. The Court considered all those arguments in reaching its determination that the motion for remand should be denied. Consequently, the Court does not find that its decision is one where there is substantial ground for difference of opinion as to the result, nor does it find that any few facts or evidence have been offered that would support reconsideration.

Based on the foregoing, Sharp's motion to amend the Court's October 18, 2017 Order to certify certain questions for an interlocutory appeal and for a stay, or in the alternative for leave to move for reconsideration is **DENIED**.

### SHARP'S EXPARTE MOTION TO STAY THE CASE PENDING DECISION ON THE MOTION TO AMEND TO CERTIFY QUESTION OR FOR RECONSIDERATION

Based on the foregoing, Sharp's motion for stay (Dkt. No. 63) of a ruling on the motion to compel arbitration pending ruling on the motion to certify questions for interlocutory appeal or for leave to move for reconsideration is **DENIED AS MOOT**.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Compel Arbitration as to the claims against HIAIC, and Grants the motion to stay as to the remaining defendants. This action is **STAYED** pending further order of the Court.

The Court **SETS** this matter for a compliance hearing regarding the arbitration status on **March 9, 2018, at 9:01 a.m.** The parties shall file a joint statement no later than **March 2, 2018**,

apprising the Court of the status of the arbitration and the effect on the stay of the litigation herein. If the Court is satisfied with the joint status statement, it may vacate the hearing and relieve the parties of the requirement to appear by further notice.

In light of the foregoing, the Court **DENIES** the motions to dismiss without prejudice to renewing them upon lifting of the stay herein.

This terminates Docket Nos. 19, 20, 61, and 63.

**IT IS SO ORDERED.**

Dated: December 5, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**